1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LEN TRAVIS,                              No.  2:14-cv-00087-KJM-EFB

12            Plaintiff,

13      v.                                    ORDER

14   CITY OF ROSEVILLE POLICE
     DEPARTMENT, et al.,
15
              Defendants.
16

17

18          On December 20, 2012, it was salsa night at The Station, a bar and restaurant in

19   Roseville, California, until Roseville Police Officer William Kanada arrived on the scene and

20   arrested Len Travis, who operates The Station.  Travis has sued Kanada and the Roseville Police

21   Department.  He claims the arrest was illegal and unconstitutional.

22          The case is now before the court on the defendants' joint motion for summary

23   judgment.  The court held a hearing on August 21, 2015, at which Jeffrey Kravitz appeared for

24   Travis and Amie McTavish appeared for the defendants.  Having considered the parties' briefing

25   and arguments at hearing, the motion is GRANTED.

26   I.      UNDISPUTED FACTS

27          The court finds the following facts are undisputed, unless otherwise noted.  Len

28   Travis operates The Station, located at 1100 Orlando Avenue in Roseville, California.  Pl.'s Resp.

1  Stmt. Undisp. Mat. Facts (UMF) nos. 1, 2, ECF No. 15-2.  Specifically, Travis is the managing

2  member of Steele Train Partners LP, a limited partnership that operates The Station.  Travis Dep.

3  at 14, 45.  A California limited liability company, 1100 Orlando LLC (the LLC), owns the

4  property.  *Id.*

5          A.     <u>Writ of Mandate</u>

6         Travis and the LLC have been involved in a longstanding dispute with the City of

7  Roseville about the business at 1100 Orlando Avenue.  On May 20, 2011, the Placer County

8  Superior Court entered judgment in a case between the LLC and the Roseville Planning and

9  Redevelopment Department, case number SVC-23813.  Defs.' Request for Judicial Notice (Defs.'

10  RJN) Ex. B, at COR00610, ECF No. 12-3.[1]  The superior court upheld the City's determination

11  that dancing at 1100 Orlando Avenue violated the Roseville Municipal Code.  *See id.* at

12  COR000611; *id.* Ex. A, at 2.  A few weeks later, on June 15, 2011, the superior court issued a

13  temporary restraining order against the LLC:

14            The City has established that operations and activities at subject
property of 1100 Orlando Avenue in Roseville, California . . . exist
15            and constitute a public nuisance as a matter of law . . .

16            1100 Orlando LLC and its agents, employees, servants, successors
or assigns, those acting on their behalf or in concert with them, and
17            any occupants of the building and facilities at 1100 Orlando
Avenue in Roseville California . . . are [ ] restrained and prohibited
18            from engaging in any activities or conducting any business that is
defined as a dance club, night club, or . . . permit[ting] dancing on
19            the subject property.

20            . . . Cross-Defendants [the LLC] [are] restrained and prohibited
from engaging in any activities or conducting any business that is
21            defined as operating a[ ] nightclub on the subject property.

22  *Id.* Ex. A, at 2.

23         The next month, on July 5, 2011, the superior court held a hearing on the LLC's

24  motion for reconsideration and on the City's motion for a preliminary injunction.  *Id.* Ex. B.  The

25  motion for reconsideration was denied, and the motion for a preliminary injunction was granted

26  ──────────────────────

27      [1] The court grants the defendants' unopposed request for judicial notice of this and the
Placer County Superior Court's later related orders, which are public documents whose existence
is not subject to reasonable dispute.  *See* Fed. R. Evid. 201; *McVey v. McVey*, 26 F. Supp. 3d 980,
28  984 (C.D. Cal. 2014), *appeal dismissed* (Apr. 22, 2015).

1  on the same terms as the temporary restraining order described above.  *Id.*  In its order, the

2  superior court reiterated that "the use of the property [at 1100 Orlando Avenue] had expanded

3  beyond its original use, in violation of [the Roseville Municipal Code, or RMC] 19.24.020, and

4  therefore [the LLC] had lost its legal non-conforming use."  *Id.* at COR000611.  "When [the

5  LLC] lost its legal non-conforming use status, [it] was obligated to comply with the current

6  municipal code."  *Id.*  The LLC did not appeal.

7          Approximately nine months later, on March 22, 2012, the superior court granted

8  the City's motion for summary judgment on its claims for nuisance and declaratory relief.  *Id.*

9  Ex. C.  The superior court found it was "undisputed that [the LLC] lost its legal non-conforming

10  use status" and that the court's previous orders made clear the LLC "was operating its

11  establishment as a nightclub without a valid permit, which constituted a violation of the RMC."

12  *Id.* at COR000791–92.  The superior court granted summary judgment despite the LLC's

13  argument that it was "not in violation of previous versions of the RMC."  *Id.* at COR000792.  The

14  City also requested a permanent injunction on each of its claims.  *Id.*  The superior court declined

15  to afford that relief, but in doing so it held the City had nonetheless met its burden on this motion

16  as to "unpermitted dancing."  *Id.*

17          B.      Officer Kanada's Investigation and the Arrest

18          In August 2011, Officer Kanada was part of an undercover operation investigating

19  The Station.  UMF no. 5.  His investigation led him to the conclusion that patrons of 1100

20  Orlando Avenue were dancing.  UMF no. 6.  Kanada met with Travis in November 2012 and

21  gave him a copy of the superior court's preliminary injunction and other paperwork.  UMF no. 8.

22  Nevertheless, Travis told Kanada he would continue operating The Station and would continue to

23  allow his customers to dance.  UMF no. 9.

24          On December 14, 2012, Kanada and agents from several state agencies visited The

25  Station again.  UMF no. 11.  He found the bartender had served alcohol to an obviously

26  intoxicated person, a misdemeanor.  UMF no. 12; Cal. Bus. & Prof. Code § 25602.  He detained

27  two people for public intoxication.  UMF no. 13.  He cited Steele Train Partners LP for violation

28  of Roseville Municipal Code sections requiring a dance permit, governing zoning violations, and

3

1    related to the service of intoxicated persons.  UMF no. 14.  After the visit, the Deputy Labor

2    Commissioner issued a Stop Order to The Station prohibiting further operation until it obtained

3    workers' compensation insurance for its employees, kept payroll records, and complied with

4    other wage laws.  UMF nos. 15–16.

5           The next day, December 15, 2012, while driving to The Station to meet with an

6    agent from the California Department of Alcoholic Beverage Control (ABC), Kanada saw Travis

7    driving away from The Station onto Riverside Avenue; Travis turned without making a signal and

8    rolled over a limit line.  UMF nos. 17–18, 20.  Kanada stopped Travis and smelled alcohol, so he

9    called another officer to conduct a DUI investigation, and Travis was arrested.  UMF no. 19.  On

10   December 16, 2012, Kanada discovered that security guards working at The Station had no

11   security guard registration cards, *see* Cal. Bus. & Prof. Code § 7583.3, and one had cocaine in his

12   wallet, which led to the guards' arrests, UMF no. 21.  Kanada also issued citations to Travis for

13   violating a court order, for allowing dancing without a permit, for operating a public nuisance,

14   and for public disturbance.  UMF no. 22.

15          The Station was closed December 17–19, 2012, but opened again on December 20,

16   2012.  UMF no. 24.  As noted above, that was salsa night.  UMF no. 25.  Kanada drove by and

17   noticed The Station was open and saw ABC agents escorting Travis out of The Station.  Kanada

18   Decl. ¶¶ 21–22.  The agents were investigating violations of the Labor Code and Stop Order.

19   *Id.* ¶¶ 23–25.  Based on his earlier interactions with Travis, patrons of The Station, and security

20   guards, Kanada also believed Travis was operating The Station in violation of the Business and

21   Professions Code.[2]  *Id.* ¶ 27.  Travis did not want to speak to Kanada and produced no proof of

22   workers' compensation insurance, UMF no. 33, but Kanada did not ask specifically for proof of

23   insurance, *see id.*; Travis Decl. ¶ 5.  Kanada placed Travis under arrest, read him his *Miranda*

24   /////

25   _____

26        [2] "Every licensee, or agent or employee of a licensee, who keeps, permits to be used, or
     suffers to be used, in conjunction with a licensed premises, any disorderly house or place in

27   which people abide or to which people resort, to the disturbance of the neighborhood, or in which
     people abide or to which people resort for purposes which are injurious to the public morals,

28   health, convenience, or safety, is guilty of a misdemeanor."  Cal. Bus. & Prof. Code § 25601.

1   rights, and led him to the back of his patrol car.  UMF nos. 32, 34; *see also* Kanada Decl.

2   ¶¶ 29-31.  The parties confirmed at hearing that Kanada had no warrant for the arrest.

3   　　　　　Travis argues several of the foregoing facts are disputed because he has

4   insufficient knowledge to admit or deny them.  *See, e.g.*, Pl.'s Resp. Statement of Material Facts

5   no. 17, ECF No. 15-2.  At the pleadings stage, a party must admit or deny each allegation.

6   Fed. R. Civ. P. 8(b)(1).  But a party opposing summary judgment must "set forth specific facts" in

7   the record to show a trial is necessary to resolve genuine disputes.  *Anderson v. Liberty Lobby,*

8   *Inc.*, 477 U.S. 242, 250 (1986); *see also* Fed. R. Civ. P. 56, notes of advisory comm. on 2010

9   amendments (noting that although Rule 56 was amended, effective December 1, 2010, "[t]he

10   standard for granting summary judgment remains unchanged").  In addition, because Travis bears

11   the burden of proof at trial, the defendants may succeed on summary judgment by illustrating the

12   absence of any evidence to support his case.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387

13   (9th Cir. 2010); *see also* E.D. Cal. L.R. 260(b) ("Any party opposing a motion for summary

14   judgment or summary adjudication shall . . . admit those facts that are undisputed and deny those

15   that are disputed, including with each denial a citation to the particular portions of any pleading,

16   affidavit, deposition, interrogatory answer, admission, or other document relied upon in support

17   of that denial.").

18   　　　　　Although Travis and two other employees received misdemeanor notices to appear

19   for violations of a court order, they were never prosecuted.  Travis Decl. ¶¶ 7–9.  Travis has

20   produced a certificate of liability insurance issued to Spirited Investments, LLC, with a policy

21   period from December 20, 2012 to December 20, 2013.  Travis Decl. Ex. 1.  He avers Spirited

22   Investments, LLC employed everyone who was working at The Station on December 20, 2012.

23   *Id.* ¶ 3.  He did not identify or produce this certificate of insurance during discovery, although it

24   was responsive to the defendant's request for production of documents.  *See* McTavish Decl.

25   ¶¶ 2–6, Ex. B, ECF No. 17-3.  The document also postdates the arrest.  *See* Travis Decl. Ex. 1

26   (dated Dec. 28, 2012).

27   /////

28   /////

5

1      C.      Administrative Appeal

2              In the meantime, beginning in mid-2011, the city of Roseville had issued Travis

3      several other citations for violations of the municipal code.  *See* Travis Dep. at 45–46; Pl.'s

4      Request for Judicial Notice (Pl.'s RJN), Ex. 1, at 3–4, ECF No. 15-3.[3]  Travis challenged these

5      citations in an administrative appeal process, but the City of Roseville Board of Appeals upheld

6      the citations.  *See id.* Ex. 1, at 1–5.

7              Travis appealed the board's decision to the Placer County Superior Court, and a

8      referee of that court held a two-day hearing in late February 2013.  *See id.* Ex. 1, at 1.  In a written

9      decision filed on March 7, 2013, the superior court held that the City had not proved by a

10     preponderance of the evidence that Travis was required to have a dance permit or that he was

11     operating a "nightclub" at 1100 Orlando Avenue.  *Id.* Ex. 1, at 12.  The court did not address any

12     decision in the earlier superior court case, number SVC-23813.  The citations were overturned.

13             The City appealed to a three-judge panel of the Superior Court's appellate

14     division.  *See id.* Exs. 2, 3.  It argued the 2011 decisions in case number SCV-23813 barred any

15     relitigation of whether the property at 1100 Orlando Avenue could be used for dancing without a

16     permit, and also argued the referee's decision was not supported by substantial evidence.  *See*

17     *generally id.*  In two opinions issued in April 2014, the appellate division upheld the referee's

18     decision.  *Id.*  After noting the dismal state of the record on appeal and chiding the City for its

19     failure to cite that record, the appellate division concluded the City had not carried its burden to

20     show collateral estoppel applied: several of the citations were issued before any court order

21     enjoined dancing at 1100 Orlando Avenue; the July 5, 2011 order in Case No. SVC-23813 was

22     not a final judgment for purposes of collateral estoppel; and the issue of collateral estoppel had

23     not been addressed at the February 2013 hearing before the referee.  *Id.* Ex. 2, at 7–13; *id.* Ex. 3,

24     at 8–15.  The appellate division also concluded that the referee's decision was supported by

25     substantial evidence: the decision in Case No. SVC-23813 was not binding, and the record on

26     appeal led to "considerable contradictory inferences as to the scope of the nonconforming use

27     _____

28             [3] The court grants Travis's unopposed request for judicial notice of these public
       documents.  *See supra* note 1.

                                                        6

1    status that remained along with its applicability to [Travis]." *Id.* Ex. 2, at 14–15; *id.* Ex. 3, at

2    15-16.  The appellate division therefore affirmed the referee: "Where conflicting inferences may

3    reasonably be drawn, the determination of the trial court will be accepted on appeal even though a

4    contrary determination would likewise be upheld." *Id.* (citations and quotation marks omitted).

5    II.    LEGAL STANDARD

6            This court must grant a motion for summary judgment "if the movant shows there

7    is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

8    law." Fed. R. Civ. P. 56(a).  A motion for summary judgment calls for a "threshold inquiry" into

9    whether a trial is necessary at all, that is, whether "any genuine factual issues . . . properly can be

10   resolved only by a finder of fact because they may reasonably be resolved in favor of either

11   party." *Anderson*, 477 U.S. at 250.  The court does not weigh evidence or evaluate the credibility

12   of witnesses; rather, it determines which facts the parties do not dispute, then draws all inferences

13   and views all evidence in the light most favorable to the nonmoving party. *See id.* at 255;

14   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).  "Where the

15   record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

16   there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of*

17   *Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

18           The moving party bears the initial burden of "informing the district court of the

19   basis for its motion, and identifying those portions of the [record] which it believes demonstrate

20   the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

21   (1986).  If the party opposing summary judgment bears the burden of proof at trial, the moving

22   party need only illustrate the "absence of evidence to support the non-moving party's case." *In re*

23   *Oracle Corp. Sec. Litig.*, 627 F.3d at 387.  The burden then shifts to the non-moving party to "go

24   beyond the pleadings" and "designate specific facts" in the record to show a trial is necessary to

25   resolve genuine disputes of material fact. *Celotex*, 477 U.S. at 323.  The non-moving party "must

26   do more than simply show that there is some metaphysical doubt as to the material facts."

27   *Matsushita*, 475 U.S. at 586.  "Only disputes over facts that might affect the outcome of the suit

28

1   under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477

2   U.S. at 247–48.

3   III.      EVIDENTIARY OBJECTIONS

4           Rule 56 allows objections to evidence when "the material cited . . . cannot be

5   presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  As this

6   language suggests, at summary judgment, the evidence's propriety depends not on its form, but

7   on its content.  *Celotex*, 477 U.S. at 324; *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir.

8   2001).  The court addresses objections here only to the extent it relies on the evidence that is the

9   subject of the objection.

10          Travis objects to Kanada's reliance on the statements of ABC agents, arguing

11  these statements are hearsay.  *See* Objections, ECF No. 15-4.  Hearsay statements are those

12  "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party

13  offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid.

14  801(c).  Hearsay is generally inadmissible.  *Id.* R. 802.  But the definition of hearsay does not

15  encompass statements offered to show something other than the truth of the matter asserted.  Fed.

16  R. Evid. 801, 1972 advisory comm. note; *United States v. Perez*, 658 F.2d 654, 659 & n.4 (9th

17  Cir. 1981).  Travis also argues Kanada lacked any personal knowledge of any Labor Code

18  violation.  *See generally* Objections.  As a general matter, a lay witness "may testify to a matter

19  only if evidence is introduced sufficient to support a finding that the witness has personal

20  knowledge of the matter." Fed. R. Evid. 602.

21          The evidence here is admissible.  Kanada does not seek to establish the truth of the

22  agents' statements, only that he had information at his disposal that would have led a reasonable

23  person to conclude Travis had violated the Labor Code and Stop Order on the night of

24  December 20, 2012.  *See* Fed. R. Evid. 602, 701, 801.  Moreover, Kanada was entitled to reliance

25  on the statements and knowledge of other officers in the context of determining probable cause.

26  *See United States v. Hensley*, 469 U.S. 221, 231 (1985) ("[E]ffective law enforcement cannot be

27  conducted unless police officers can act on directions and information transmitted by one officer

28  to another and that officers, who must often act swiftly, cannot be expected to cross-examine their

1   fellow officers about the foundation for the transmitted information." (citation and quotation

2   marks omitted)); *United States v. Jensen*, 425 F.3d 698, 704–05 (9th Cir. 2005) ("Where law

3   enforcement authorities are cooperating in an investigation, the knowledge of one is presumed

4   shared by all.  The rule exists because, in light of the complexity of modern police work, the

5   arresting officer cannot always be aware of every aspect of an investigation; sometimes his

6   authority to arrest a suspect is based on facts known only to his superior or associates." (citations,

7   quotation marks, and alterations omitted)).

8   IV.     DISCUSSION

9            Travis advances three claims against Kanada and the Roseville Police Department:

10  violation of his Fourth and Fourteenth Amendment rights; state-law false arrest and

11  imprisonment; and negligence.  Compl. ¶¶ 16–25, ECF No. 1.  Here, however, he does not

12  oppose the defendants' motion with respect to his claim for negligence, and agrees to dismissal of

13  that claim.  *See* Opp'n at 9.  At hearing, the parties confirmed this stipulation.  The negligence

14  claim is therefore dismissed.

15         A.      Federal Claims

16                 1.      Fourth Amendment:  Officer Kanada

17         "The Fourth Amendment safeguards '[t]he right of the people to be secure in their

18  persons, houses, papers, and effects, against unreasonable searches and seizures.'"  *Atwater v.

19  City of Lago Vista*, 532 U.S. 318, 326 (2001) (quoting U.S. Const. Am. XIV).  But if Travis's

20  arrest was supported by probable cause, the arrest did not violate his Fourth Amendment rights,

21  and the motion must be granted.  *Id.* at 354; *Harper v. City of L.A.*, 533 F.3d 1010, 1022 (9th Cir.

22  2008); *Blankenhorn v. City of Orange*, 485 F.3d 463, 470–71 (9th Cir. 2007).

23         "Probable cause to arrest exists when officers have knowledge or reasonably

24  trustworthy information sufficient to lead a person of reasonable caution to believe that an offense

25  has been or is being committed by the person being arrested."  *United States v. Lopez*, 482 F.3d

26  1067, 1072 (9th Cir. 2007); *see also Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Beck v. State of

27  Ohio*, 379 U.S. 89, 91 (1964).  The standard is not susceptible to a precise, percentage-based

28  definition "because it deals with probabilities and depends on the totality of the circumstances."

1    *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 432

2    (9th Cir. 2010).  Conclusive evidence of guilt is not necessary to create probable cause, but "mere

3    suspicion, common rumor, or even strong reason to suspect are not enough."  *Harper*, 533 F.3d at

4    1022 (citation, alteration, and quotation marks omitted).  It does not matter whether the suspect is

5    later proved innocent.  *Pierson v. Ray*, 386 U.S. 547, 555 (1967).

6           Probable cause does not depend on the officer's subjective state of mind.  *Whren v.*

7    *United States*, 517 U.S. 806, 812–13 (1996); *Tatum v. City & Cnty. of S.F.*, 441 F.3d 1090, 1094

8    (9th Cir. 2006).  The officer may believe the person has committed "only a very minor criminal

9    offense," *Tatum*, 441 F.3d at 1094 (quoting *Atwater*, 532 U.S. at 354), and the officer may

10   subjectively believe the person is guilty of a different offense and yet have probable cause to

11   arrest, *see Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[The officer's] subjective reason for

12   making the arrest need not be the criminal offense as to which the known facts provide probable

13   cause.").  But some particular criminal statute must make the person's conduct unlawful.  *Torres*

14   *v. City of L.A.*, 548 F.3d 1197, 1207 (9th Cir. 2008) (citing *Devenpeck*, 543 U.S. at 153–56, and

15   *Virginia v. Moore*, 553 U.S. 164 (2008)).

16          Federal courts have also adopted the "collective knowledge doctrine" of probable

17   cause.  *See Hensley*, 469 U.S. at 231.  "Under the collective knowledge doctrine, in determining

18   whether probable cause exists for arrest, courts look to 'the collective knowledge of all the

19   officers involved in the criminal investigation.'"  *Harper*, 533 F.3d at 1022 (quoting *United States*

20   *v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007)).  Officers may rely on their peers: they "cannot

21   be expected to cross-examine their fellow officers about the foundation for the transmitted

22   information."  *Hensley*, 469 U.S. at 231.  In addition, "evidence supporting probable cause need

23   not be admissible in court," but "it must be 'legally sufficient and reliable.'"  *Crowe*, 608 F.3d at

24   432–33 (quoting *Franklin v. Fox*, 312 F.3d 423, 438 (9th Cir. 2002)).

25          Here, first, Kanada had reasonably trustworthy information to conclude, with

26   reasonable caution, that Travis had committed a criminal act at the time of arrest.  He knew there

27   was dancing at The Station, and as of December 20, 2012, the Placer County Superior Court had

28   enjoined dancing at The Station without a permit.  California law prohibits violations of court

1   orders as criminal contempt.  *See* Cal. Penal Code § 166(a)(4).  Although a finding of criminal

2   contempt cannot rest on a void court order, *People v. Gonzalez*, 12 Cal. 4th 804, 816–17 (1996),

3   Travis's administrative appeal was unresolved in December 2012, and the Placer County Superior

4   Court's 2011 orders remained in effect.

5            Second, Kanada had reasonably trustworthy information at his disposal to

6   conclude The Station was operating in violation of a Stop Order and without workers'

7   compensation insurance.  Private employers must "secure the payment of compensation" by

8   either insurance against liability or a certificate of consent to self-insure.  Cal. Lab. Code § 3700.

9   And when an employer does not secure that insurance, a stop order may issue, "prohibiting the

10   use of employee labor . . . until the employer's compliance with the provisions of [Labor Code]

11   Section 3700."  Cal. Lab. Code § 3710.1.  And the "[f]ailure of an employer, officer, or anyone

12   having direction, management, or control of any place of employment or of employees to observe

13   a stop order issued and served upon him or her pursuant to [Labor Code] Section 3710.1 is a

14   misdemeanor . . . ."  Cal. Lab. Code § 3710.2.  On December 20, 2012, Kanada knew a Stop

15   Order had issued, knew The Station was under investigation for Labor Code violations, saw state

16   ABC agents at The Station investigating violations of the Labor Code and Stop Order, and heard

17   reports from them that Travis had violated the Labor Code and Stop Order.  Travis produced no

18   proof of insurance.[4]

19            Because Kanada had sufficient information at his disposal to meet the probable-

20   cause standard, the arrest was constitutional.  Travis may not prevail by showing he was never

21   prosecuted for Labor Code or municipal violations, or that the Placer County Superior Court later

22   overturned his citations for violating the municipal code.  At the time of the arrest, Kanada had

23

24         [4] The City also argues Kanada had sufficient information at his disposal to conclude
Travis had operated The Station in violation of Business and Professions Code 25601.  *See* Mot.

25   Summ. J. at 7–8.  The most recent published California appellate decision to cite this statute is
more than twenty years old.  *See Yu v. Alcoholic Bev. etc. Appeals Bd.*, 3 Cal. App. 4th 286

26   (1992).  In addition, the California Supreme Court has observed section 25604 "has been applied
to . . . public displays of and attempts to gratify sexual (usually homosexual or lesbian) desires."

27   *Boreta Enters. v. Dep't Alcoholic Beverage Control*, 2 Cal. 3d 85, 97–98 (1970).  The court need
not and does not reach the question of probable cause on the basis of a possible violation of

28   section 25601.

1   reliable information that dancing at 1100 Orlando Avenue violated the municipal code and a court

2   order, and that Travis was operating The Station in violation of the Stop Order.  *See Pierson*,

3   386 U.S. at 555 (later legal victory does not nullify probable cause per se).  And although the

4   superior court's 2011 orders technically applied to the LLC rather than Travis or The Station,

5   those orders spoke broadly of dancing at 1100 Orlando Avenue.  *See* Def.'s RJN Ex. A, at 2

6   ("The City has established that operations and activities at subject property of 1100 Orlando

7   Avenue in Roseville, California . . . exist and constitute a public nuisance . . . .  [The LLC] and its

8   agents, employees, servants, successors or assigns, those acting on their behalf or in concert with

9   them, and any occupants of the building and facilities at 1100 Orlando Avenue in Roseville

10  California . . . are [ ] restrained and prohibited from engaging in any activities or conducting any

11  business that is defined as a dance club, night club, or . . . permit[ting] dancing on the subject

12  property.").

13          The motion is granted on this claim.

14                  2.      Fourth Amendment:  Roseville Police Department

15          Municipalities may be held liable as "persons" under 42 U.S.C. § 1983, *Monell v.*

16  *Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978), but not if a plaintiff establishes no federal

17  statutory or constitutional violation, *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986); *Aguilera v.*

18  *Baca*, 510 F.3d 1161, 1174 (9th Cir. 2007).

19          Even were the court to conclude Kanada lacked probable cause to arrest Travis on

20  December 20, 2012, Travis has not established the Police Department's liability.  "[A]

21  municipality may not be held liable under § 1983 solely because it employs a tortfeasor."  *Bd. of*

22  *Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).  A plaintiff asserting a claim under *Monell*

23  must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  *Id.*  "Locating

24  a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the

25  decisions of its duly constituted legislative body or of those officials whose acts may fairly be

26  said to be those of the municipality."  *Id.* at 403–04.

27          A plaintiff may establish municipal liability by demonstrating "the constitutional

28  tort was the result of a 'longstanding practice or custom which constitutes the standard operating

                                                    12

1    procedure of the local government entity.'"  *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008)

2    (quoting *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 984–85 (9th Cir. 2002)).  To establish

3    liability for governmental entities under a practice-or-custom theory, a plaintiff must show

4    (1) that the plaintiff "possessed a constitutional right of which [he or she] was deprived; (2) that

5    the municipality had a policy; (3) that this policy amounts to deliberate indifference to the

6    plaintiff's constitutional right; and, (4) that the policy is the moving force behind the

7    constitutional violation."  *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th

8    Cir. 1997) (internal quotation marks omitted).

9            Travis argues the Roseville Police Department and City of Roseville had a policy

10   "to harass him and the Station" by "engag[ing] in a pattern or practice of issuing administrative

11   citations for dancing when they knew that dancing was allowed on the premises."  Opp'n at 8.

12   Putting aside for the moment that this allegation appears nowhere in the complaint, the evidence

13   here establishes that at the time of the arrest, the Placer County Superior Court had found any

14   dancing at The Station without a dance permit was a nuisance and violated the municipal code.

15           The motion is granted on this claim.

16           3.      Fourteenth Amendment Substantive Due Process

17           In addition, although Travis cites the Fourteenth Amendment in his complaint, the

18   Fourth Amendment provides "an explicit textual source of constitutional protection" for his

19   claims here; for this reason summary judgment is granted as to any claim under the Fourteenth

20   Amendment.  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842–44 (1998) (holding that if a

21   plaintiff challenges a search or seizure, the Fourth Amendment applies, not the Fourteenth (citing,

22   *inter alia*, *Graham v. Connor*, 490 U.S. 386, 395 (1989))).

23           The motion is granted on this claim.

24   /////

25   /////

26   /////

27   /////

28   /////

13

1

    B.    State Law False Arrest[5]

2            "Under California law, the elements of a claim for false imprisonment are: '(1) the

3    nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an

4    appreciable period of time, however brief.'"  *Young v. Cnty. of L.A.*, 655 F.3d 1156, 1169 (9th

5    Cir. 2011) (quoting *Easton v. Sutter Coast Hospital*, 80 Cal. App. 4th 485, 496 (2000)).  False

6    arrest and false imprisonment are the same tort.  *Asgari v. City of L.A.*, 15 Cal. 4th 744, 753 n.3

7    (1997).  A police officer is not immune from liability for false imprisonment.  *Id.* at 752.  But

8    Section 847 of the California Penal Code provides,

9            There shall be no civil liability on the part of, and no cause of
10           action shall arise against, any peace officer . . . acting within the
             scope of his or her authority, for false arrest or false imprisonment
11           arising out of any arrest [if] . . .

12           . . . [t]he arrest was lawful, or the peace officer, at the time of the
             arrest, had reasonable cause to believe the arrest was lawful.

13   Cal. Penal Code § 847(b).

14           "Reasonable cause" or "probable cause" is a "well-established" legal standard

15   under California law.  *People v. Adair*, 29 Cal. 4th 895, 904 (2003).  "Reasonable or probable

16   cause means such a state of facts as would lead a man of ordinary caution or prudence to believe,

17   and conscientiously entertain a strong suspicion of the guilt of the accused."  *People v. Mower*,

18   28 Cal. 4th 457, 473 (2002) (citations and quotation marks omitted).  "Reasonable and probable

19   cause may exist although there may be some room for doubt."  *Id.*  It is an objective standard; the

20   defendant need not show the officers had enough information to conclude the plaintiff actually

21   committed a crime.  *Adair*, 29 Cal. 4th at 904–05; *Levin v. United Airlines*, 158 Cal. App. 4th

22   1002, 1018 (2008).  A person may be factually innocent, yet an officer have probable or

23   reasonable cause to arrest him.  *Buckheit v. Dennis*, No. 09-5000, 2012 WL 1166077, at *28–29

24   (N.D. Cal. Apr. 6, 2012) (citing *Adair*, 29 Cal. 4th at 905), *aff'd in relevant part*, 573 F. App'x

25   662 (9th Cir. 2014).  This is essentially the same standard as the federal constitutional standard.

26
27           [5] The defendants' memorandum of points and authorities includes no argument addressing
     Travis's state law claims.  Their notice of motion, however, requests summary judgment on his
     state law claims, ECF No. 12, and at hearing, he and the defendants agreed the matter may be
28   submitted for decision on the basis of the existing briefing.

14

1   *Davis v. Cnty. of San Bernardino*, No. 08-1262, 2009 WL 3838287, at *5 (C.D. Cal. Nov. 13,

2   2009) (citing, inter alia, *Mower*, 28 Cal. 4th at 473, and *Adair*, 29 Cal. 4th at 904–05), *aff'd*,

3   442 F. App'x 300 (9th Cir. 2011).

4          Here, for the same reasons described above with respect to Travis's federal

5   constitutional claims, the motion must be granted.  Kanada had facts at his disposal that would

6   have led a reasonable person to believe that on December 20, 2012, Travis was operating The

7   Station in violation of a court order and the Stop Order.  Because Kanada had probable or

8   reasonable cause, the Police Department is likewise not liable under a *respondeat superior* theory.

9          The motion is granted as to this claim.

10   V.    CONCLUSION

11          Plaintiff's negligence claim is DISMISSED.  Defendants' motion for summary

12   judgment otherwise is GRANTED.  This order resolves ECF No. 12.  CASE CLOSED.

13          IT IS SO ORDERED.

14   DATED:  October 6, 2015.

15

16

17   _____

     UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28